## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**DENNIS SAUCIER**                                                                                           **PLAINTIFF**

**v.**                                                  **CIVIL ACTION NO. 2:15-CV-7-KS-MTP**

**LAMAR COUNTY BOARD OF SUPERVISORS**
**AND JOSH GANDY, INDIVIDUALLY**                                         **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Josh Gandy's ("Gandy") Motion for Summary Judgment Based on Qualified Immunity ("Motion for Summary Judgment") [55] and Plaintiff Dennis Saucier's ("Plaintiff") Motion to Strike [61]. After considering the submissions of the parties, the record, and the applicable law, the Court finds that Gandy's Motion for Summary Judgment should be granted in part and denied in part. The Court further finds that Plaintiff's Motion to Strike [61] should be denied as moot.

## I. BACKGROUND

This matter arises out of Gandy's arrest of Plaintiff at his residence on January 15, 2014. Plaintiff filed the current action with this Court on January 29, 2015, and filed his Amended Complaint [14] on March 20, 2015. In his Amended Complaint [14], Plaintiff alleges, *inter alia*, that Gandy's actions were unconstitutional under the Fourth and Fourteenth Amendment and brings claims under 42 U.S.C. § 1983.

Gandy went to Plaintiff's home that day to speak with him about an incident in which Plaintiff fired his hunting rifle in a field he owned and utilized to graze cattle and hunt deer. Across the street from this field is an oil well operated by Spooner Petroleum, and when Plaintiff discharged his weapon that day, a truck driver was present on the oil well site. After he discharged his rifle, Plaintiff then went home.

The truck driver reported the incident to the supervisor of the well, Gary Garrison ("Garrison"), and a 911 call was made. Gandy arrived on the scene soon after. Gandy spoke only to Garrison, (Gandy Depo. [55-10] at p. 53), and was told that the company wanted to make a record of the incident. (Garrison Depo. [55-4] at p. 25.) He was further asked by Garrison to go speak with Plaintiff because "[they] didn't need all this out here, because all [they were] trying to do was [their] jobs." (*Id.*)

Gandy went to Plaintiff's house to speak with him, with no intention of making an arrest. (*See* Gandy Depo. [55-10] at p. 64.) Most of the facts surrounding the arrest that followed are in dispute. All parties do agree, though, that Gandy deployed his Taser at some point and that Plaintiff was arrested inside his home without a warrant.

## II.  MOTION FOR SUMMARY JUDGMENT [55]

**A.     Standard of Review**

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted). The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812 (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).  When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138.  However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted).  Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

**B.     Qualified Immunity**

Qualified immunity protects government officials sued in their official capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982)).  This doctrine, where applicable, is a bar to suit altogether "rather than a mere defense to liability." *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L.Ed.2d 411 (1985)).  The Supreme Court has explained that "the driving force behind the creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials [will] be resolved prior to discovery." *Id.* at 231-32 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, n.2, 107 S. Ct. 3034, 97 L.Ed.2d 23 (1987)) (internal quotations omitted and alteration in original).

3

There are two steps in deciding whether qualified immunity applies. *Id.* at 232. "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001)) (internal citations omitted). If the plaintiff can establish this, then "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* If both steps are satisfied, qualified immunity does not apply.

The only federal claims Plaintiff appears to bring against Gandy are claims under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments. Specifically, Plaintiff claims that Gandy executed a wrongful arrest and used excessive force, both in violation of the Fourth and Fourteenth Amendments. The Court examines each claim to determine whether qualified immunity applies.

**C.     Wrongful Arrest**

The Supreme Court has held that "the Fourth Amendment . . . prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest."[1] *Payton v. New York*, 445 U.S. 573, 576, 100 S. Ct. 1371, 63 L.Ed.2d 639 (1980). While the Fifth Circuit has not extended this protection to situations where a suspect is arrested "at the open door of his residence or . . . [somewhere] otherwise accessible to the public," *Fontenot v. Cormier*, 56 F.3d 669, 674 (5th Cir. 1995), it has affirmed that "the Fourth Amendment has drawn a firm line at the entrance to the house." *Hogan v. Cunningham*, 722 F.3d 725, 731 (5th Cir. 2013) (quoting *Payton*, 445 U.S. at 590, 100 S. Ct. 1371). "Without a warrant, 'police officers need . . . probable

---

[1]Parties' submissions inexplicably focus only on the probable cause aspect of the arrest, though Plaintiff does argue that a warrant is required for the misdemeanor for which Gandy argues he had probable. However, in the interest of justice, the Court cannot ignore an obvious constitutional defect of the arrest that is apparent when the disputed facts are construed in Plaintiff's favor, when Defendants had ample notice that the arrest's constitutionality is being challenged.

cause plus exigent circumstances in order to make a lawful entry into a home.'" *Id.* (quoting *Kirk v. Louisiana*, 536 U.S. 635, 638, 122 S. Ct. 2458, 153 L.Ed.2d 599 (2002)).

The only evidence about what transpired at the time of Plaintiff's arrest is the testimonies of Gandy and Plaintiff. As previously stated, when ruling on a motion for summary judgment when there are facts in dispute, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. Furthermore, the Court is not permitted to make credibility determinations or weigh the evidence. *Deville*, 567 F.3d at 164 (citing *Turner*, 476 F.3d at 343). Therefore, for purposes of Gandy's Motion for Summary Judgment [55], the Court must accept Plaintiff's version of the events as credible and true.

Plaintiff claims that he stood at his open door and spoke with Gandy after he knocked on his door. (Saucier Depo. [62-4] at p. 72.) At the beginning of their conversation, there was some confusion over the person Gandy wanted to speak to, as Gandy mistakenly asked for "Danny Wayne Saucier." (*Id.* at p. 73.) Once it was established that Plaintiff was in fact who Gandy was looking for, Gandy then asked Plaintiff if he had a problem with a truck driver. (*Id.* at 74.) Plaintiff asked for clarification, which Gandy did not give. (*Id.*) Gandy then looked away and said something Plaintiff could not hear but what he took to be, "You shot that oil well five times. I was there." (*Id.* at 74-75.) Plaintiff did not at that point understand what was going on and asked if Gandy had a warrant for his arrest, to which Gandy replied that he did not. (*Id.* at 75.) Plaintiff then told Gandy to "get [his] ass off [his] property." (*Id.*) Plaintiff then shut the door but was prevented from closing it entirely by Gandy, who attempted to push it back open. (*Id.* at 75-76.) Plaintiff released the door, either to prevent Gandy from sticking something into the hinges of the door or to prevent Gandy himself from being stuck in the hinges. (*See id.* at 76 ("He going to be stuck [sic] something in the hinge side, I figured.").) Gandy then kicked in the door and shocked Plaintiff with his Taser. (*Id.*) The

5

conversation between Gandy and Plaintiff, from the time Plaintiff answered the door to the time Gandy kicked the door in, lasted about thirty seconds. (Saucier Affidavit [61-1] at ¶ 15.)

Plaintiff attempted to remove the Taser wires from his body. (Saucier Depo. [61-4] at p. 76.) When he finally did, Gandy hit him on the back of the head with what he believes to be the Taser gun. (Saucier Affidavit [61-1] at ¶ 18.) After he was struck, Plaintiff got up and sat on the couch, at which point he was told that he was being arrested for resisting arrest. (Saucier Depo. [61-4] at p. 81.)

It is abundantly clear that, taking this version of the events as true, Plaintiff's arrest took place inside his home, which Gandy did not have consent to enter. Furthermore, there is no dispute as to the fact that Gandy did not have a warrant for Plaintiff's arrest. Therefore, in order to lawfully enter Plaintiff's home and arrest him, Gandy needed probable cause plus exigent circumstances. *Hogan*, 722 F.3d at 731 (quoting *Kirk*, 536 U.S. at 638, 122 S. Ct. 2458). The Court need not decide whether probable cause existed in this case because there were no exigent circumstances under which Gandy could have made a lawful entrance.

The three notable exigencies that the Supreme Court has recognized are the need for emergency aid, hot pursuit, and imminent destruction of evidence. *See Kentucky v. King*, 563 U.S. 452, 460, 131 S. Ct. 1849, 179 L.Ed.2d 865 (2011) (listing the exigencies previously recognized by the Supreme Court). Gandy could not have believed that he was needed to render emergency aid to someone inside the home, nor could he have reasonably believed that he needed to prevent the imminent destruction of evidence. *See id.* The only potential exigency that could have existed was that of a hot pursuit.

In *Santana*, the Supreme Court held that a hot pursuit "means some sort of a chase," even if it "need not be an extended hue and cry in and about (the) public streets." 427 U.S. at 42-43, 96 S. Ct. 2406. The Court held in *Welsh v. Wisconsin*, though, that the claim of hot pursuit is unconvincing when there is "no immediate or continuous pursuit of the [suspect] from the scene of the crime." 466

U.S. 740, 753, 104 S. Ct. 2091, 80 L.Ed.2d 732 (1984).  Furthermore, most, if not all, Supreme Court precedent involving hot pursuit specifically mentions a "fleeing" suspect.  *See, e.g., Stanton v. Sims*, 134 S. Ct. 3, 6, 187 L.Ed.2d 341 (2013).  Gandy himself admitted that he did not consider himself to be in hot pursuit of Plaintiff when he first approached the house.  (Gandy Depo. [55-10] at p. 63.)  Plaintiff had not fled from the scene of the crime.  Taking Plaintiff's version of the arrest to be true, the Court cannot hold that he was fleeing from an attempt to arrest either.  In a very similar situation where the suspect had opened the door of his apartment after the police had knocked, the Fifth Circuit in *Hogan* held that, where the suspect was inside his home at all times, there can be no hot pursuit.  722 F.3d at 733.  From his perspective, Plaintiff was merely disengaging from a voluntary encounter with a police officer, which escalated when Gandy forced his way into Plaintiff's home.  There was no hot pursuit which would have justified Gandy's entrance into Plaintiff's home.

Gandy's alleged warrantless and nonconsensual entrance would be a plain violation of the Fourth Amendment as established in *Payton*.  *See* 445 U.S. at 576, 100 S. Ct. 1371.  Plaintiff therefore can satisfy his burden in meeting the first step of the qualified immunity analysis from *Pearson*.  555 U.S. at 231-32.  The final step is to determine whether Gandy's violation was a violation of clearly-established law.

In deciding whether qualified immunity applies when the suit alleges a wrongful arrest, the "determination turns on whether 'a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the . . . officer[] possessed.'" *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (quoting *Hunter v. Bryant*, 112 S. Ct. 534, 536, 116 L.Ed.2d 589 (1991)).  Supreme Court and Fifth Circuit precedent "make it abundantly clear that either a warrant or probable cause and exigent circumstances is required to arrest an individual in his home." *Hogan*, 722 F.3d at 733.  Because no reasonable officer could have believed the arrest to be lawful under the

7

circumstances, Gandy is not entitled to qualified immunity on Plaintiff's claim of wrongful arrest under § 1983, and his Motion for Summary Judgment [55] will be **denied** as to this claim.

**D.     Excessive Force**

Even if Plaintiff's arrest is ultimately deemed to have been unlawful, "that alone does not mean that the force used to effectuate the arrest was excessive." *Hogan*, 722 F.3d at 733. A violation of the Fourth Amendment for excessive force requires the following be proven: "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and that (3) the force used was objectively unreasonable." *Id.* at 734 (quoting *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). Gandy puts forward no evidence to show that Plaintiff was not injured as direct result of the force that was used. He argues only that the force used was not objectively unreasonable.

As with the analysis of the legality of the arrest itself, the only evidence about what transpired at the time of Plaintiff's arrest is the testimonies of Gandy and Plaintiff. Viewing the disputed facts in the light most favorable to Plaintiff, the Court must accept Plaintiff's version of the events as true. *See Sierra Club, Inc.*, 627 F.3d at 138.

Plaintiff claims that at no point before he attempted to close the door did Gandy attempt to arrest him nor did Gandy give him any verbal commands. (Saucier Affidavit [62-1] at ¶ 14.) Frustrated at Gandy's lack of communication over why he was at his door, Plaintiff asked if there was a warrant for his arrest, and upon learning there was not, told the officer to get off his property and attempted to shut the door. (*Id.*; *see also* Saucier Depo. [62-4] at 74-76.) As he shut the door, Gandy pushed it back open, causing Plaintiff to release the door. (Saucier Depo. [62-4] at 75-76) Gandy then kicked the door open and shocked Plaintiff with his Taser. (*Id.*) Gandy used the Taser on Plaintiff for multiple cycles. (Saucier Affidavit [62-1] at ¶ 16.) Plaintiff attempted to remove the Taser wires from his body. (Saucier Depo. [61-4] at p. 76.) When he finally did, Gandy hit him on

the back of the head with what he believes to be the Taser gun.  (Saucier Affidavit [61-1] at ¶ 18.) After he was struck, Plaintiff got up and sat on the couch, at which point he was told that he was being arrested for resisting arrest.  (Saucier Depo. [61-4] at p. 81.)

The first step in deciding whether qualified immunity exists is analyzing whether there was a constitutional violation.  *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001)).  There is no doubt that, under the reasonableness test from *Graham v. Connor*, the use of force in this case was objectively unreasonable.  490 U.S. 386, 396, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1983).  In deciding whether the use of force was reasonable in any given case, *Graham* directs the Court to consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.*  None of Plaintiff's actions could have justified Gandy's use of his Taser.  The alleged crime, though involving a gun, was not so severe as to make Gandy believe he was putting himself in danger by approaching the house. Gandy had not even planned on making an arrest when he first approached Plaintiff's home.  (*See* Gandy Depo. [55-10] at p. 64.)  Nothing in Plaintiff's words or actions could have made Gandy fear for his safety or that of others, and Gandy did not communicate to Plaintiff that he was under arrest, making the idea of Plaintiff resisting or evading arrest impossible.  From Plaintiff's description of the events, it appears that he was cooperative, if confused, with Gandy until he grew frustrated with the officer and attempted to eject him from his property and disengage from the conversation, at which point Gandy physically forced his way into the house and utilized his Taser.  Given the facts and circumstances described in Plaintiff's testimony, the provocation of Gandy's use of force appears to be anger over Plaintiff's dismissal of him.  With no other legitimate provocation to justify the force used, Gandy's actions were objectively unreasonable in violation of the Fourth Amendment.

9

However, to defeat qualified immunity, Plaintiff not only has to show that there was a constitutional violation, but that the violation was of a clearly established right. *Pearson*, 555 U.S. at 232, 129 S. Ct. 808. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202, 121 S. Ct. 2151. Under the facts as given by Plaintiff's testimony, Gandy's use of physical force was clearly excessive and without legitimate provocation. No reasonable officer could have believed that Gandy's use of force was lawful in that situation. *See Martinez-Aguero v. Gonzalez*, 459 F.3d 618, 626-27 (5th Cir. 2006). If the Fourth Amendment prohibition against excessive force means anything, it means an officer cannot use physical force out of anger alone.

Therefore, qualified immunity does not exist as to Plaintiff's excessive force claim, and Gandy's Motion for Summary Judgment [55] will be **denied** as to this claim.

**E.     Other Claims**

Plaintiff asserts no arguments against Gandy for the other federal claims listed in his Amended Complaint [14], namely claims under § 1983 for violations of due process under the Fifth and Fourteenth Amendments and for violations of his Second Amendment rights. The Court assumes these claims have been abandoned and will therefore **grant** Gandy's Motion Summary Judgment [55] as to them. Gandy makes no argument as to why he is entitled to qualified immunity for the pending state law claims, and the Court will **deny** his motion as to these claims.

### III.  MOTION TO STRIKE [61]

In his Motion to Strike [61], Plaintiff requests the Court strike the testimony of Bill Lawrence from consideration in deciding on Gandy's Motion for Summary Judgment [55]. As the Court finds Gandy's motion should be denied in relevant part regardless of this testimony, Plaintiff's Motion to Strike [61] will be **denied as moot**.

## IV.  CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Gandy's Motion for Summary Judgment [55] is **granted in part** and **denied in part**.

It is **granted** as to Plaintiff's claims under 42 U.S.C. § 1983 for violations of due process under the Fifth and Fourteenth Amendments and violations of his Second Amendment rights.

It is **denied** as to all pending state law claims and for Plaintiff's claims under 42 U.S.C. § 1983 for wrongful arrest and excessive force in violation of the Fourth and Fourteenth Amendments.

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff's Motion to Strike [61] is **denied as moot**.

SO ORDERED AND ADJUDGED this the 17th day of December, 2015.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE